# Richmond.

WESTERN STATE HOSPITAL v. CRANDAL MACKEY,
EXECUTOR OF W. C. CRAWLEY.

November 15, 1928.

Absent, Chichester and Holt, JJ.

The opinion states the case.

*E. H. DeJarnette, Jr.*, for plaintiff in error.

*Timberlake & Nelson* and *Cornelius H. Doherty*, for the defendant in error.

CAMBELL, J., delivered the opinion of the court.

This is an action by notice of motion brought by Crandal Mackey, executor of W. C. Crawley, deceased, to recover of the defendant, Western State Hospital, the sum of six hundred and fifty dollars.

The notice alleges: "That on, to-wit, the 15th day of October, 1923, William C. Crawley was legally committed to the defendant hospital as an insane patient from the county of Arlington, State of Virginia, and William C. Crawley was received by the said defendant hospital, being at the time of the said commitment and prior thereto, a citizen of the State of Virginia, and a resident in the county of Arlington, State of Virginia.

"That thereafter, to-wit, November 1, 1923, one Michael J. Crawley was appointed committee of the estate of William C. Crawley, so declared insane; that the said Michael J. Crawley, while committee as aforesaid, was required by the superintendent of the defendant hospital to pay twenty-five dollars a month out of the funds belonging to the estate of William C. Crawley, insane patient, to the said defendant hospital for the board and maintenance of the said William C. Crawley for each and every month between the 15th day of October, 1923, and the 23rd day of October, 1925; that the said Michael J. Crawley, while acting as committee did pay, out of the estate of William C. Crawley, insane patient, twenty-five dollars to the said

defendant hospital for each and every month, inclusive, from the 15th day of October, 1923, until the 23rd day of October, 1925, being charged and accepted by the said defendant hospital for his board and maintenance therein in direct opposition to the requirements and restrictions of section ten hundred and fifty and ten hundred and fifty-eight of the Code of the Commonwealth of Virginia."

The defendant, by counsel, filed a demurrer to the notice of motion, alleging as a ground of demurrer, "that it is an arm of the State of Virginia, and as such cannot be sued in this case without its consent, and that it refuses to grant its consent to be sued in this case." The court overruled the demurrer, and this action of the court is assigned as error.

The action in the instant case is, in substance, an action of assumpsit for money had and received.

In *Stuart, Governor* v. *Smith-Courtney Co.*, 123 Va. 234, 96 S. E. 241, the refusal of the court to sustain the demurrer filed to the petition was assigned as error. The grounds of demurrer are set forth as follows:

"That this is a suit against the State government, or a board created by the State for governmental purposes, and cannot be maintained without the consent of the State, and that the statute which created the State Lime Grinding Board does not authorize it to sue or be sued, and that there is no other statute which authorizes a suit to be maintained against the State Lime Grinding Board."

Mr. Chief Justice Prentis, delivering the opinion of the court, said: "The question is not a new one in this State, and it may be regarded as settled that proceedings based upon contracts will lie against the State and its agencies by authority of this statute [section 746, Code 1904] * * *. The demurrer then was properly

overruled, for the Commonwealth will not be astute to escape inquiry into its liability for its alleged contracts, or take advantage of technical defenses which are permissible to other litigants."

In *General Board* v. *Robertson*, 115 Va. 527, 79 S. E. 1064, a case in part against the present defendant, the distinction is drawn between a suit against the hospital in its governmental and in its private capacity, and it is expressly held that the Western State Hospital, in its private capacity, is suable.

In *Nelson* v. *Coleman*, 126 Va. 275, 101 S. E. 413, it is held that while neither counties, which are political sub-divisions of the State, nor the State or its governmental agencies can be sued in tort, the plaintiff may, where injury to personal property is involved, waive the tort and sue upon an implied contract to pay for the property which has been taken, damaged or converted to the defendants' use. The holding in the *Nelson Case, supra,* is based upon the doctrine of *Eastern Lunatic Asylum* v. *Garrett,* 27 Gratt. (68 Va.) 163. There the right of the plaintiff to recover, in an action of trover, the value of corn and bacon taken by the Federal forces and sent to the superintendent for use in the asylum was upheld. The maxim "for every wrong there is a remedy," is as applicable to the State as it is to an individual, and especially is this true where the injury flows from a breach of contract.

There is no merit in this assignment of error.

It is also assigned as error that the court erred in entering judgment for the plaintiff. When the case was called for trial a jury was waived and all matters of law and fact were submitted to the court. There was a judgment for the plaintiff in the sum of $550.00.

It appears from the record that after the commitment of W. C. Crawley to the hospital as an insane patient, M. J. Crawley, on the 1st day of November, 1923, was appointed committee of his estate; that M. J. Crawley was the brother of the lunatic and his sole heir. While the evidence of the witnesses does not appear in the record, it does appear from a memorandum filed as a part of the record by the trial court, that when W. C. Crawley was taken to the hospital by M. J. Crawley, his brother and sole heir, that he, M. J. Crawley, stated to the superintendent that he wished to defray the expense of keeping his brother. "Thereupon the superintendent of the hospital explained to this committee that under the law he had no authority whatever to make a charge and made none. To this the committee made answer that he wished nevertheless to pay and the superintendent then informed him that if in the light of these facts he still desired to make payment, the usual charge was $25.00 a month, and this charge the committee then said he would pay and has actually paid."

Instead of being required by the superintendent, as alleged in the notice, to pay the sum of $25.00 per month for the keep of his insane brother, the committee was advised that under the law no charge could be made for the care of the patient.

Section 1050 of the Code provides in part: "When the rights of creditors will not be affected, the committee of any person lawfully committed to any such hospital or colony, may, after making adequate provision for those dependent on such person or his estate for support, apply any part or the whole of the residue of the income from his estate to the purpose of providing such comforts and luxuries to such person as may be permitted by the superintendent of such hospital or colony; and may pay the same to the steward of such hospital or colony."

As far as the record discloses there are no outstanding equities in others. M. J. Crawley is the only person interested in the distribution of his brother's estate.

That the furnishing of "extras" to the patient was in the contemplation of the parties, is evidenced by a letter written by the superintendent to M. J. Crawley, dated December 7, 1923, and is as follows: "Your letter received with check for $53.00 for your brother. I think it best to deposit this money here to his credit and use it for him and the next check we will be able to return part of.

"He should have a little money ahead here to get some extras from time to time. The old gentleman seems to be very well satisfied, which is certainly a blessing."

Section 1058 of the Code, so far as applicable, reads thus: "The estate of any person committed to any hospital for the insane or colony for the epileptics or the feeble-minded shall not be charged with any expense incident thereto or for his maintenance therein. Nothing in this section, however, shall be construed to relieve the committee of any insane, epileptic or feeble-minded person, or idiot, from paying to the steward of any hospital or colony the sum required to be paid by this chapter for *extra comforts* of persons confined in said hospitals or colony; *nor to make it unlawful for any such committee to make voluntary gifts* which said committee may deem conducive to the happiness and comfort of such persons so confined." (Italics supplied.)

This section specifically provides that the committee of an insane patient may make voluntary gifts to the hospital if he deems such gifts conducive to the happiness and comfort of the patient. That the committee had in mind that a gift to the hospital would redound to

the benefit of his insane brother is plainly inferable from the fact that he insisted upon "paying" the usual charge of $25.00 per month. This, instead of a payment, was plainly a gift, under section 1058. If there was any doubt about it being so intended, still we would hold that this was plainly an application of a part of the estate, under the provisions of section 1050 of the Code, for the purpose of providing comforts and luxuries to the patient.

However, let us take another view of the matter. Whether legally or illegally, M. J. Crawley made a gift to the defendant. If he transcended his authority, then a right of action follows against him. Conceding, then, that the hospital took money which the donor had no right to give, this does not render the defendant liable in an action at law. Here there is no question of a resulting trust, for it must be conceded that such a right is only maintainable in a court of equity.

We are, therefore, of opinion that whether viewed in the light of section 1058, or in the light that M. J. Crawley made a gift of money which in due course would have become his, that it is manifest that the defendant is not liable in any event.

For these reasons the judgment complained of must be reversed and annulled, and this court will enter judgment for the Western State Hospital, pursuant to the provisions of section 6365 of the Code.

*Reversed.*